T. N. WILSON et al. v. D. W. DEWEESE.

*Equity in Land Subject to Execution—Administrator's Sale of Land.*

1. An allegation in a complaint that one purchased the land in controversy and paid for the same and was entitled to a grant from the State on the payment of the grant fees (where such land is a part of the "Cherokee Lands") is a sufficient declaration that the charges have been paid to the proper officer and that nothing remains to be done but to procure a grant from the Secretary of State in the usual way.

2. One who has purchased lands within the "Cherokee Land" boundary, and has paid for them and is entitled to a grant on payment of the grant fees, has a vested equitable estate therein which is subject to execution.

3. An allegation that "the administrators, in the administration of the estate of deceased, sold certain lands and assigned the certificate of survey," is not a sufficient averment of a sale under lawful authority, but in an action to recover such lands such insufficiency is cured by the allegation that the administrator obtained judgment on the notes given for the purchase of such lands and had the same sold under execution, for, in such case, the law presumes that the Court acted properly in rendering the judgment and will not permit it, or the sale made under it, to be attacked in an indirect and collateral way.

This was a CIVIL ACTION, tried before *Armfield, J.,* at Fall Term, 1893, of the Superior Court of CHEROKEE County.

The defendant demurred to the complaint of the plaintiffs and his Honor sustained the demurrer and gave judgment against the plaintiffs and Jas. C. Axley on their prosecution bond for the costs of the action.

The plaintiffs excepted to the ruling and judgment and appealed to the Supreme Court.

The plaintiffs complained as follows:

"1. That they are owners of the following described entries or tracts of land in District No. 5 of Cherokee county, North Carolina, to-wit (here follows the description).

"2. That they are entitled to the legal title to the same by reason of the facts following, to-wit: One Joseph Wilson, late of said county, but now dead, who was the father of the plaintiffs, T. N. and M. C. Wilson, purchased the said tracts of land and paid for the same and was entitled to the grant from the State of North Carolina on the payment of grant fees for same.

"3. That soon after the death of said Joseph Wilson, in the year _ _ _, C. C. Gentry and T. N. Wilson became administrators of said deceased, and that in their administration of the

estate of said deceased they sold the said lands and assigned the certificates of survey and other papers necessary on which to obtain grants from the State to the defendant, D. W. Deweese, and one J. M. Lovinggood ; that the said sale embraced other lands as well as the lands herein described and was made on credit to amount of $537.50, for which notes were given ; that on failure to pay, as agreed, said administrators obtained judgment against said purchasers, Deweese and Lovinggood, and caused the lands herein described as entries No. 1,297 and No. 2,124 to be sold at execution sale by the Sheriff of said county, at which sale the said C. C. Gentry, administrator aforesaid, bid in the same and took deeds for said lands in his own name, and has, since said sale at execution as aforesaid, conveyed the same to T. N. Wilson, M. C. Wilson, and others, heirs at law of said deceased.

" 4. That since the sale of the said land by the Sheriff as aforesaid the defendant, D. W. Deweese, having the said papers on which to obtain grants as aforesaid, has wrongfully and without purchase or consideration other than as aforesaid on the 3d day of May, 1892, procured grants from the State to said lands, tracts No. 1,297 and No. 2,194; that such issue of grants to said defendant and in his name was without the consent and against the will of the plaintiffs, and was greatly to the injury of the plaintiffs.

" 5. That, as aforesaid, the plaintiffs are equitable owners and entitled to the legal title to said lands.

" 6. That plaintiffs made demand on said defendant for said title papers after the said execution deed and before the grants for the same.

"Wherefore plaintiffs ask the judgment of the Court:

" 1. That they be adjudged owners and entitled to the legal title to said lands.

" 2. That D. W. Deweese be declared trustee and required to convey same to plaintiffs.

"3. For the costs of the action."

The defendant, for cause of demurrer, alleged:

"1. That it appears on the face of said complaint that the plaintiffs have no right to maintain this action, because said plaintiffs have no interest in said lands, their said interest having been assigned to the defendant and to J. M. Lovinggood for valuable consideration.

"2. That at the time of the alleged sale under execution the defendant had no interest in the lands described in said complaint which was subject to sale under execution."

*Messrs. J. W. &. R. L. Cooper*, for plaintiffs (appellants).
*Mr. Edmund B. Norvell*, for defendant.

AVERY, J.: The allegation in a complaint that the father of the plaintiffs "purchased the said land (that in controversy) and paid for the same and was entitled to the grant from the State of North Carolina on the payment of the grant fees for the same," where such lands were located within the boundary known as the "Cherokee Lands," is a sufficient declaration that the charges of the State, under the law applicable to that body of land, had been paid to the proper officer, and that nothing remained to be done in order to perfect the title but to procure a grant from the Secretary of State upon exhibiting the proper certificates of survey and paying the commissions allowed that officer for issuing it. The charges for the land having been paid in full, the interest of Joseph Wilson was no longer in the nature of an inchoate equity, but was like that of a vendee holding a bond for title or contract for purchase of land, and who has paid the whole of the stipulated price. *Hinsdale* v. *Thornton*, 75 N. C., 381. Both the interest of the vendee and of the proposed purchaser, who has paid the price agreed upon between himself and the agents of the

State, are liable to sale under execution for precisely the same reason. Each has a right to demand the conveyance of the legal title from the contractor, and each holds a vested equitable estate as distinguished from a mere equitable right. *Hinsdale* v. *Thornton, supra.* The fact that some little cost may attend the execution and registration of the deed or grant fails to relegate it either to the class of imperfect, incomplete or inchoate equities. The shades of difference in the details to be looked to in perfecting title are not sufficient to stamp upon one the character of an inchoate and on the other that of a 'perfect equity or unmixed trust. This question has never, so far as we can discover, been directly decided, but upon "the reason of the thing" there can be no doubt about the correctness of the principle we have stated.

If Joseph Wilson had paid the notes given for the purchase at one of the sales of Cherokee land, as we may infer from the language employed in the complaint, his administrators might treat the interest as a part of his real estate and procure a decree for a sale of it to make assets. They might assign it to the purchaser at the sale made under such decree, and on the failure of such purchaser to pay the price for which he gave his note the interest might, like that of a vendee who has paid all of the purchase-money and upon the same principle, have been sold under execution to satisfy the judgment for the unpaid price. But the allegation that "in the administration of the estate of said deceased they sold the said lands and assigned the certificates of survey" is not a sufficient averment that the sale was made under lawful authority or by virtue of a decree of a competent court, which alone would authorize the intermeddling of administrators with the real estate of a decedent. The statutes which permit personal representatives to sell land under a license to make assets are in

42

derogation of the common law, and the sale of land is not
to be treated in pleadings as one of the usual concomitants
of the "administration of the estate" of a decedent. Being
out of the ordinary course of administration, the allegation
should have been, not simply that the administrator sold,
but that they sold "by virtue of a decree of a competent
Court," or "by lawful authority," or it should ordinarily
have been couched in some similar language that would
have indicated that they did not attempt to treat the landed
interest like a chattel, to be disposed of by personal repre-
sentatives in the ordinary course of administration. But
while it would seem, if nothing more appeared, that the
allegation as to the authority to sell was insufficient, and
that the action might have been liable to dismissal on
demurrer *ore tenus*, the case assumes a different phase when
we find further on in the complaint the allegation that the
administrators obtained judgment upon the notes given for
the purchase-money of the land at the first sale, and sold
upon that judgment. The law presumes that the Court
acted properly in rendering the judgment, and will not
permit it or the sale made under it to be attacked in this
indirect and collateral way. *McGlawhorn* v. *Worthington*,
98 N. C., 199. The presumption arises, when the sale on
a judgment for the purchase-money is admitted to have
been made, that the judgment was valid and rendered
upon notes given for the interest at a sale under the proper
license.

For the reasons given we think that the Court erred in
sustaining the demurrer. The judgment must be reversed.
The demurrer should have been overruled and the defend-
ants allowed to answer over upon such terms as the Court
saw fit to prescribe.                            Reversed.